IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JENNIFER YOUNG, Personal Representative of the Estate of Lori R. Heiting, Deceased;<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF DAWES, a Nebraska Political Subdivision; COUNTY OF BOX BUTTE, a Nebraska Political Subdivision; and DOES 1-10,<br><br>Defendants. | 7:13CV5002<br><br>MEMORANDUM AND ORDER |

This matter is before the court on plaintiff's motion for partial summary judgment, Filing No. 50, and defendants' motion for summary judgment, Filing No. 55, both pursuant to Fed. R. Civ. P. 56. Plaintiff filed this action alleging that Lori R. Heiting died in the custody of jail personnel due to their negligence and excessive punishment and indifference to medical needs in violation of 42 U.S.C. § 1983 and under Nebraska state negligence law. Filing No. 69, Second Amended Complaint. Plaintiff also filed objections to defendants' exhibits, Filing No. 72, and defendants filed a motion in limine, Filing No. 75.

## BACKGROUND

Jennifer Young is the personal representative ("PR") of the Estate of Lori R. Heiting, deceased. On or about December 3, 2010, law enforcement stopped Lori Heiting and arrested her for driving under the influence of alcohol. The officers took her to Chadron Community Hospital where she was suffering from hypertension, alcoholism and back pain. The doctor prescribed Atenolol for the hypertension and Vicodin for the back pain. The officers then escorted her to the Box Butte County jail. She apparently

began having chest pains and her hands started to shake, and at some point a jailer took her blood pressure which was 182/128. No medication was given to her, as it was too early for more Atenolol. The PR states that at no time did Heiting see a physician or medically trained person. Heiting went to her cell and some hours later jail employees found her hanging off her bed and unresponsive. An autopsy was performed several days thereafter. The PR contends she and her attorney made repeated written and oral requests for information and asked for the results of the autopsy. On or about February 14, 2011, the Box Butte County attorney gave consent to share the autopsy report with the plaintiff and counsel. However, on March 1, 2011, the attorney rescinded the agreement.[1] The PR filed the instant case on January 22, 2013. The PR was without the records from at least December 7, 2010, until April 19, 2013, when she first received the federal court Rule 26 mandatory disclosures containing the jail logs. This was the first time the PR knew about the above information. On May 13, 2013, pursuant to a subpoena, the PR received the Nebraska State Patrol documents regarding written statements and information from jail employees that shows the jail employees attributed Heitings behavior to alcohol withdrawal. The PR argues that she and her counsel tried diligently to obtain this information, but were unsuccessful prior to filing this lawsuit. Plaintiff argues that defendants were deliberately indifferent to Heiting's medical needs, and further asserts that there was not appropriate training, policies or procedures in place to handle this situation.

---

[1] The PR was provided with a copy of the death certificate on March 1, 2011, but it simply stated the cause of death as cirrhosis of the liver.

**STANDARD OF REVIEW**

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Id.* at 251-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.,* 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.,* 371 F.3d 394, 396 (8th Cir. 2004).

## DISCUSSION

### A. Defendants' Motion for summary judgment, Filing No. 55

Following the filing of defendants' motion for summary judgment, the court granted plaintiff's motion to file a second amended complaint. *See* Filing Nos. 61 and 69. As a result, the court finds defendants' motion for summary judgment is moot except as it pertains to the statute of limitations discussed below. However, if the defendants wish to reassert this motion, or to amend and refile their motion and briefs, they may do so within 14 days of the date of this Memorandum and Order. Accordingly, Filing No. 55 is denied as moot. For the same reason, the objections by the plaintiff, Filing No. 72, to defendants' index of evidence, Filing No. 70, are denied as moot.

### B. Statute of Limitations, partial summary judgment, Filing No. 50

4

Plaintiff moves for partial summary judgment on defendants' affirmative defense that the two year statute of limitations[2] expired prior to the filing of this lawsuit.  Pursuant to Nebraska law,

> a cause of action accrues, and the period of limitations begins to run, when a potential plaintiff discovers, or in the exercise of reasonable diligence should discover, the political subdivision's negligent act or omission.

*Polinski v. Omaha Pub. Power Dist.,* 554 N.W.2d 636, 639 (Neb. 1996); Neb. Rev. Stat. § 13-919(1).  The plaintiff bears the burden of proof on her summary judgment motion as well as the burden to show she is entitled to an exception under the statute of limitations.  *Ryan v. U.S.*, 534 F.3d 828, 831 (8th Cir. 2008).  Plaintiff filed suit on January 22, 2013.  This date marked two years and 49 days after the death of Heiting.  The necessary jail records were not given to the PR until April 19, 2013.  On May 13, 2013, the PR received documents from the Nebraska State Patrol pursuant to a subpoena.  The State withheld documents until the required Rule 26 discovery disclosures.  The PR and counsel attempted numerous times to obtain these documents and jail records.  *See* Filing No. 51-17 at ¶¶ 8-32; 51-19, 21, 22, 23, 24, 25, and 26.  The PR very clearly articulates that she believes defendants concealed the "facts and circumstances surrounding the death of Heiting."  *See* Amended Complaint, Filing No. 69, ¶¶ 49 and 54.  *See*, e.g., *Mandolfo v. Mandolfo,* 796 N.W.2d 603, 611-12 (Neb. 2011) (discussing application of the discovery rule in fraudulent concealment cases).

This court has previously stated:

---

[2] Defendants refer to the two-year statute of limitations at Neb. Rev. Stat. § 13-919(1).

5

A plaintiff proves fraudulent concealment by proving the "defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which prevent the plaintiff from discovering the misconduct." *Andres v. McNeil Co.,* 270 Neb. 733, 707 N.W.2d 777, 787 (2005). "[T]he doctrine of fraudulent concealment may render a statute of limitations defense unavailable." *Andres*, 707 N.W.2d at 786. "[F]raudulent concealment can apply regardless of the nature of the cause of action." *Id*. at 787. Generally, a plaintiff asserting the doctrine of fraudulent concealment must prove concealment by an affirmative act or misrepresentation. *Id*. Additionally, for the plaintiff to estop the defendant from claiming a statute of limitations defense, the plaintiff must have exercised due diligence to discover the plaintiff's cause of action prior to expiration of the statute of limitations. *Id*.

The "discovery rule" provides that the statute of limitations "begins to run when the facts constituting fraud were discovered or, by reasonable diligence, should have been discovered." *Hope v. Klabal*, 457 F.3d 784, 791 (8th Cir. 2006) (internal quotations omitted). See *Shlien v. Bd. of Regents*, 263 Neb. 465, 473, 640 N.W.2d 643 (Neb. 2002) (the discovery rule is not applicable where the plaintiff discovers, "or in the exercise of reasonable diligence should have discovered, the injury within the initial period of limitations running from the wrongful act or omission."); *Rodrigue v. Olin Employees Credit Union,* 406 F.3d 434, 444 (7th Cir.2005) ("the discovery rule tolls the statute of limitations until such time as the plaintiff knew or reasonably should have known that she has a cause of action for her injury"); *John Hancock Fin. Servs. v. Old Kent Bank*, 346 F.3d 727, 734 (6th Cir. 2003) (the discovery rule prevents "unjust results when a plaintiff would otherwise be denied a reasonable opportunity to bring suit due to the latent nature of the injury or the inability to discover the causal connection between the injury and the defendant's action").

*Progress Tail Services Corp. v. Western Heritage Credit Union*, 506 F. Supp.2d 285, 292 (D. Neb. 2007).

The defendant asserts that the plaintiff knew of the injury on or about December 3, 2010, the date Ms. Heiting died. The suspicion of improper care in custody is so high that a grand jury must be convened whenever an individual dies in custody. The plaintiff was on notice that a wrongful death claim was possible shortly after Ms. Heiting expired. Any delay in obtaining medical records should not have prevented the plaintiff

from filing a tort claim within two years of the date of death. In fact, the instant suit was filed prior to plaintiff's receipt of the contested records.

Under these facts, the court finds that summary judgment is warranted. There are no genuine issues of material fact concerning the allegations of concealment sufficient to invoke the discovery rule.[3] Accordingly, the court will grant the PR's partial motion for summary judgment with respect to the state law negligence claim.

### C.  Defendants' Motion in Limine, Filing No. 75

Plaintiff has identified the following individuals as expert witnesses in her case-in-chief, as well as disclosing their credentials and respective reports and/or letters outlining their proposed trial testimony:

1. Dr. Lee Ann Grossberg (Forensic Pathology Expert)
2. Dr. Kenneth Scissors (Emergency and Internal Medicine Expert)
3. Jeff Eiser (Jail Operations Expert)
4. Dr. Michael Sorrell (Internal Medicine Expert)[4]

Defendants challenge the admissibility of expert testimony at trial pursuant to Fed. R. Evid. 403, 702, 703, and 704, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S 579 (1993). This "gatekeeping" obligation applies not only to "scientific" testimony, but to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The testimony of an expert must be useful or helpful to the trier of fact, but it cannot usurp the function of the jury. *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th

---

[3] The court is further not concerned about the fact that defendants' failure to provide the relevant evidence to the PR put the PR in an untenable position—allow the statute of limitations to run, or risk filing a lawsuit and incurring the sanctions set forth in Fed. R. Civ. P. 11, if in fact there existed no evidence of malfeasance. The defendant's delay in producing documents could easily give rise to a request by the plaintiff for sanctions.

[4] The PR identified the Dr. Sorrell as an expert witness for "rebuttal" purposes only.

7

Cir. 1995). The evidence must likewise be relevant. Fed. R. Evid. 403. Federal Rule of Evidence 702 governs the admissibility of expert testimony and states:

> A witness who is qualified as an expert by knowledge, skill experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Hose v. Chicago Northwestern Transportation Company, 70 F.3d 968, 974 (8th Cir. 1995) (quoting Loudermill v. Dow Chem. Co., 863 F.2d 566, 570 (8th Cir. 1988)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. Only if an expert's opinion is "so fundamentally unsupported that it can offer no assistance to the jury" must such testimony be excluded. Hose, 70 F.3d at 974.

First, the PR offers the expert testimony of Dr. Lee Ann Grossberg. With respect to this expert, defendants contend "that she not be permitted to testify as to her proposed opinion that, "had Ms. Heiting been brought to the hospital in order to control her hypertension, test for myocardial infarct, and control her alcohol withdrawal signs and symptoms, that she would not have died on December 4, 2010," because this opinion is without foundation, is speculative, and does not meet reliability standards."

8

Additionally, the PR proposes that Dr. Scissors testify as an expert in this case.

Defendants argue that this court should issue:

A. "An Order providing that Dr. Scissors is not permitted to testify as to what particular actions he subjectively believes jailers "should have taken," or to offer any testimony suggesting that any of the actions or inactions of jailers constituted the unauthorized practice of medicine, as such proposed testimony would be unhelpful and confusing to jurors, as well as being unduly prejudicial, and further, specifically providing that Dr. Scissors may not testify to the following (or related) proposed opinions expressed by him in his report:

    i. That, "Chest pain is a medical complaint that should be taken seriously, especially in a person whose medical history is basically unknown."

    ii. That Jailer Melton should have taken or caused to be taken other vital signs for Heiting aside from her blood pressure on December 3, 2010.

    iii. That Jeanie Melton "made an unqualified medical decision to wait until Lori's scheduled blood pressure medication was due to give her a dose, and allow Lori to return to her cell."

    iv. That, "By making medical decisions regarding treatment and extent of evaluation for the inmate's medical complaints and findings, Jailer Melton exceeded her scope of duties – in essence, practicing medicine without a license."

    v. That, "A complaint of chest pain in a person with an unknown medical history is a serious complaint and should have been reported to a medical professional when first disclosed at 2:30PM on December 3, 2010."

B. An Order providing that Dr. Scissors is not permitted to testify as to his subjective opinions on Dr. Simmons' credibility, and specifically providing that Dr. Scissors may not testify to the following (or related) proposed opinion expressed by him in his report:

    i. That, Dr. Simmons "speculated" in his cause of death determination concerning Lori Heiting.

C. For an Order providing that Dr. Scissors not be permitted to offer his proposed "causation" opinions because the same are fundamentally

9

unsupported and too speculative to be helpful to the jury, and specifically providing that Dr. Scissors may not testify to the following (or related) proposed opinions or matters expressed by him in his report:

> i. what he believes "would have" medical personnel would have done, reviewed, or decided if Lori Heiting had been admitted to the hospital,

> ii. whether any measures he thinks "would have" been taken by hospital staff would have "more probable than not" or "far more likely than not" been successful in preventing the death of Lori Heiting.

3. With respect to Plaintiff's prospective expert witness Jeffrey Eiser, Defendants move for the following relief:

A. For an Order providing that Mr. Eiser be disallowed from providing any testimony as a witness in this case, and that his report be stricken from the record and not allowed as evidence for purposes of any motion or at trial, because he is not sufficiently qualified to render his proposed testimony in this matter.

B. For an Order providing that Mr. Eiser be disallowed from providing any testimony as a witness in this case, and that his report be stricken from the record and not allowed as evidence for purposes of any motion or at trial, because such proposed testimony is unreliable in that Mr. Eiser failed to consider relevant facts of the case in reaching such opinions.

C. For an Order providing that Mr. Eiser not be permitted to testify to his proposed opinions which purport to state the applicable law and/or express opinions cast in terms of outcome determinative legal conclusions, because these are irrelevant and unreliable matters not helpful to the jury which are potentially confusing, and specifically providing that Mr. Eiser may not testify to the following (or related) proposed opinions or matters expressed by him in his report:

> i. That, "The denial of such care would in essence 'punish' the prisoner for having a serious medical condition. The ignoring or failing to take corrective action for a prisoner's serious medical condition would amount to 'deliberate indifference' to the health and safety of the inmate."

> ii. That, "The duty of the Box Butte County Jail and its staff was to take reasonable steps to protect pre-trial detainee Lori Heiting from harm and provide her with access to

10

adequate medical assessment and care while she was in custody."

iii. That any member of Box Butte County Jail staff, "acted with deliberate indifference to the safety of pre-trial detainee Lori Heiting . . ."

iv. That, ". . . it is truly shocking to the conscience that a government agency operating a jail facility would not provide this basic level of protection for the inmates in their charge."

v. That, "An inmate potentially at risk from alcohol/chemical withdrawal and/or experiencing chest pain or discomfort is a very common and serious medical issue for today's jail facilities," and/or that an inmate "actually experiencing" "chest pain and discomfort" are each "serious medical symptoms."

vi. That Box Butte County or its Jail maintained a "custom" consistent with their actions or inactions with respect to Lori Heiting.

D. For an Order providing that Mr. Eiser not be permitted to testify to his proposed opinions as to what any jailer in Box Butte County, individually or collectively, "actually knew" in relation to Lori Heiting's medical symptoms or the seriousness of Lori Heiting's medical needs, and/or what was "obvious" concerning Lori Heiting's medical needs or the appropriate response thereto, because such proposed opinions impermissibly infringe on the province of the jury and would be unhelpful to the jury, and specifically providing that Mr. Eiser may not testify to the following (or related) proposed opinions or matters expressed by him in his report:

i. That, "The information and documents available for analysis at this time indicate that BBCJ staff, specifically Jailers Jeanie Melton and Sydney White, Chief Jailer Hovik and Dispatcher Appleyard, had actual knowledge of potential serious health risks to pre-trial detainee Lori Heiting during her incarceration."

ii. That, "In this case no one even attempted to contact medical personnel after jail staff learned of the obvious symptoms of Ms. Heiting's serious medical condition."

iii. That, jailers "ignored a known risk," "by failing to take appropriate action after being notified of a serious risk to her

11

health and safety and their inaction is directly related to her in-custody death on December 4, 2010."

E. For an Order providing that Mr. Eiser is not permitted to testify as to any opinions regarding whether the policies and/or training of Box Butte County were "adequate" to address inmate medical needs, as his proposed opinions are entirely unsupported, invade the jury's province, and are not based on generally accepted industry standards, and specifically providing that Mr. Eiser may not testify to the following (or related) proposed opinions or matters expressed by him in his report:

    i. That, "The customs and practices exhibited in this case by the BBCJ and its staff denying pretrial detainee Lori Heiting access to adequate medical care, after receiving actual knowledge of a serious medical condition, combined with a lack of adequate facility policies and direction on the risk of alcohol/chemical withdrawal and the seriousness of chest pain, places the BBCJ and its administration in violation of Nebraska Minimum Jail Standards for Adult Jail Facilities: Title 81 Nebraska Rules and Regulations, Chapter 10.001: 'It is the policy of the State of Nebraska that all jail facilities shall provide all inmates with a healthful environment and access to adequate medical care.'"

    ii. That, there is a "lack of adequate policies, procedures, training and direction for the staff of the Box Butte County jail, on the serious medical risks for prisoners who are experiencing alcohol/chemical withdrawal and/or chest pain."

F. For an Order providing that Mr. Eiser is not permitted to testify as to any "causation" opinions connecting the policies and/or training of Box Butte County to the death of Lori Heiting, as his proposed opinions are entirely unsupported, invade the jury's province, and are not based on generally accepted industry standards, and specifically providing that Mr. Eiser may not testify to the following (or related) proposed opinions or matters expressed by him in his report:

    i. That, "a lack of facility policies, procedures and direction on the serious medical risks posed by inmates experiencing alcohol/chemical withdrawal and chest pain (and discomfort)" is "directly related" to the "lack of action" by BBCJ staff to get Lori Heiting medical attention.

    ii. That, "The lack of adequate policies, procedures, training and direction for the staff of the Box Butte County Jail, on the serious medical risks for prisoners who are experiencing

12

>> alcohol/chemical withdrawal and/or chest pain, is directly related to the in-custody death of pre-trial detainee Lori Heitingon December 4, 2010."
>
> G. That Mr. Eiser not be allowed to testify concerning the content of ACA or NCCHC Standards which do not meet the "general acceptance" test, nor as to any opinions he may hold as to whether these standards were met by the jail officials in this case.
>
> 4. With respect to Plaintiff's prospective expert witness Dr. Michael Sorrell, Defendants move for the following relief:
>
> A. For an Order providing that Dr. Sorrell's report and/or proposed testimony not be permitted to be offered as evidence by Plaintiff during its case-in-chief, but only as rebuttal, and further limiting any rebuttal testimony of Dr. Sorrell to those particular issues specifically identified by the Court in its prior Order found at Doc. 60, but including his proposed testimony agreeing with Dr. Okoye that Lori Heiting was not a viable candidate for a liver transplant.
>
> B. For an additional Order providing that Dr. Sorrell's rebuttal testimony,1) may not include any opinion that Lori Heiting was actually in "alcohol withdrawal" while in the custody of Defendants, 2) may not include any opinion on Lori Heiting's actual cause of death, except inasmuch as Dr. Sorrell may testify consistent with his report that he is unable to pinpoint the actual cause of Heiting's death to a reasonable degree of medical certainty, and only holds the opinion to a reasonable degree of medical certainty that Heiting's liver disease/cirrhosis was not advanced enough to have been the sole immediate cause of Heiting's death, and 3) may not include any causation opinion regarding whether different actions by jail staff would have prevented Heiting's death.
>
> C. For an Order specifically providing that Dr. Sorrell may not testify to his proposed opinion that, "there is no way to prove" the cause of death, "because the patient did not receive any medical attention at the jail," for reason that it is misleading, speculative, potentially confusing to the jury, and entirely unsupported by the facts of this case.

Filing No. 75, pages 1-9.

With regard to Dr. Grossberg, defendants contend that she is purely speculating on what might have been done at a hospital and whether Heiting would have lived as a result of hospital treatment. Defendants contend it is pure speculation with no objective

evidence to back Dr. Grossberg's opinion. The PR points out that no one contests Dr. Grossberg's qualifications as an expert. The defendants only argue that Dr. Grossberg's opinions are not admissible or irrelevant. *But see Smith v. BMW North America, Inc,* 308 F.3d 913, 920-21 (8th Cir. 2002) (Eighth Circuit allowed expert forensic pathologist to testify as to medical causation when it is within his realm of knowledge). The court has reviewed the evidence considered by Dr. Grossberg, as well as her credentials. The court finds Dr. Grossberg is qualified to testify in this regard. If, however, at trial the defendants believe Dr. Grossberg is testifying outside of her expertise, the defendants may raise the issue at that time.

With regard to Dr. Scissors, the defendants again argue that the proposed testimony is speculation, as Dr. Scissors will testify that the jailers should have taken the chest pain complaints very seriously. Further, the defendants contend there is no objective evidence to support Dr. Scissors's belief that high blood pressure "likely" indicates that other vital signs are abnormal. Dr. Scissors, defendants argue, basically intends to testify as to the reasonableness of the actions by the jailers. Additionally, defendants contend that Dr. Scissors should not be permitted to speculate on the cause of death or comment on the credibility of Dr. Simmons. Again, the PR notes that the defendants do not say Dr. Scissors is unqualified. The PR argues, and the court agrees, that defendants will have ample opportunity to cross-examine Dr. Scissors. "An attack upon the probative sufficiency of evidence relates not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve". *United States v. Beasley,* 102 F.3d 1440, 1451 (8th Cir. 1996) (citing *United States v. Page*, 544 F.2d 982, 987 (8th Cir. 1976). The court finds the plaintiff is entitled to offer her evidence

regarding the deceased's medical issues and treatment or lack of treatment, and Dr. Scissors can offer evidence in that regard. Accordingly, the court finds the testimony of Dr. Scissors is admissible, and if it trial defendants feel Dr. Scissors steps outside of his realm of her expertise, the defendants may raise the issue at that time.

As to expert Jeffrey Eiser, Mr. Eiser has been a high-level jail administrator for 19 years. First, defendants contend that he worked in very large facilities, and the facility in this case is small. Second, defendants argue that Mr. Eiser failed to consider all relevant facts in his analysis. Third, defendants argue that Mr. Eiser should not be permitted to state applicable law or state his opinions as legal conclusions. Fourth, any opinions by Mr. Eiser as to what the jailers knew and what was obvious should be inadmissible as that is a jury function, contend defendants. Fifth, the defendants argue that Mr. Eiser's opinions regarding the adequacy of policies and/or training should be excluded as these opinions are entirely unsupported, invade the jury's province, and are not based on generally accepted industry standards. Sixth, the defendants contend that Mr. Eiser should not be permitted to testify as to causation between the lack of policies and procedures and the failure to get Lori Heiting medical attention. Again, the court finds on initial review that the challenges to this testimony go to their weight and not to admissibility. Accordingly, the court will deny the motion as to Mr. Eiser and will allow specific issues to be raised at trial if appropriate. However, the court has some concern about the testimony offered by Mr. Eiser regarding causation in this case. Prior to that testimony, the court will confer with counsel to determine if it will be admissible or not.

With regard to Dr. Sorrell, the court has previously held that his testimony qualifies as rebuttal evidence. The court stated "attempts to rebut Dr. Okoye's opinion

that Heiting would have survived only with a liver transplant, which Heiting would not have received" and "the necessity or availability of a liver transplant," if such issue was first raised by the testimony of Dr. Okoye." Filing No. 60 . The defendants want to limit Dr. Sorrell's testimony to rebuttal only and only those issues identified by the court in Filing No. 60. Defendants further ask this court to not allow Dr. Sorrell to testify that (1) he may not testify that Lori Heiting was actually in "alcohol withdrawal" while in the custody of defendants, (2) that he may not testify as to any opinions on Lori Heiting's actual cause of death, except that he is unable to pinpoint the cause of death to a reasonable degree of medical certainty, and only holds the opinion to a reasonable degree of medical certainty that Heiting's liver disease/cirrhosis was not advanced enough to have been the sole immediate cause of Heiting's death, and (3) that he may not testify as to any causation opinions regarding whether different actions by jail staff would have prevented Heiting's death. The court agrees with the plaintiff that it is very difficult to make an advanced ruling as to what this expert can testify to in rebuttal. He is designated as a rebuttal witness and, as such, he will be permitted to testify at trial only on the issues raised by the defendant's medical expert that were not covered in the expert's Rule 26 designation or deposition. The court is personally aware of Dr. Okoye's propensity for hyperbole and that an expert rebuttal witness may therefore be required. However, the plaintiff may not call a "rebuttal" witness to rebut opinions expressed by the defendant's experts during discovery. Dr. Sorrell may testify in the Plaintiff's case in chief on any issues or opinions expressed in his Rule 26 disclosure or his deposition. Dr. Sorrell also may be called the in the plaintiff's case in chief to testify concerning the soundness of Dr. Okoye's opinions concerning causation. The court will

deny this motion in limine, subject to reassertion if Dr. Sorrell testifies outside the scope of rebuttal or his expertise.

In conclusion, the court is going to allow the testimony of plaintiff's experts to proceed to trial. If at trial defendants believe an expert is giving impermissible legal conclusions or testifying outside of his or her expertise, the matter can be taken up with the court.

THEREFORE, IT IS ORDERED:

1. The defendants' motion for summary judgment, Filing No. 55, is granted in part as it relates to the statute of limitation and the remainder is denied as moot.

2. The plaintiff's motion for partial summary judgment, Filing No. 50, is denied, as the Court finds the statute of limitations has run on the negligence issue.

3. The plaintiff's objections, Filing No. 72, are denied as moot.

4. The defendants' motion in limine, Filing No. 75, is denied, as set forth herein.

5. This case shall proceed on the constitutional claims.

Dated this 20th day of January, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge
